# United States Court of Appeals
## For the First Circuit

No. 04-1038

UNITED STATES OF AMERICA,

Appellee,

v.

LUIS DANIEL AYALA-PIZARRO

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. D. Brock Hornby,* U.S. District Judge]

Before

Torruella, Lynch, and Lipez, Circuit Judges.

Maria Soledad Ramirez-Becerra, with whom Maria Soledad Ramirez-Becerra Law Office was on brief, for appellant.
Thomas F. Klumper, Assistant United States Attorney, with whom H.S. Garcia, United States Attorney, and Nelson Pérez-Sosa, Assistant United States Attorney, Senior Appellate Attorney, were on brief, for appellee.

May 12, 2005

*Of the District of Maine, sitting by designation.

**LYNCH**, <u>Circuit Judge</u>.  Luis Daniel Ayala-Pizarro was convicted, after a four-day jury trial, of possession with intent to distribute 153 decks of heroin and of knowingly possessing a firearm in furtherance of a drug trafficking crime.  21 U.S.C. § 841(a)(1); 18 U.S.C. § 924(c)(1)(A)(i).  He was acquitted of two additional gun charges involving possession of semiautomatic assault weapons.  He was sentenced to twenty-four months' imprisonment on the first charge and sixty months on the second, to be served consecutively for a total of eighty-four months' imprisonment.  He attacks both his conviction and his sentence.

We affirm Ayala's conviction.  We also affirm his sentence, save for a limited remand, agreed to by the government, for the purposes of conforming the drug testing and drug treatment program portions of Ayala's supervised release conditions to the dictates of <u>United States</u> v. <u>Melendez-Santana</u>, 353 F.3d 93 (1st Cir. 2003).

<u>Challenge to Conviction</u>

Ayala argues that the district court erred in permitting an arresting officer to cross the line from being a fact witness to being an expert witness when the officer testified about drug distribution points and how they operate as well as how heroin is normally packaged for distribution at these points. Ayala objected at trial that the officer's testimony was expert testimony under Fed. R. Evid. 702, and that no prior notice of such expert

testimony had been given, as required by Fed. R. Crim. P. 16(a)(1)(G). We describe the pertinent facts.

Officer Mulero, one of the arresting officers, testified that he arrested Ayala at 2 p.m. on a Wednesday afternoon on Melilla Street in Loiza, Puerto Rico, near a house known to be a drug point. Officer Mulero and the other arresting officer, Officer Pietri, were in the area looking for two suspects in the wounding of another man. The officers observed Ayala and another man, Luis Vazquez Alvarez, at the right-hand corner of the house. Ayala and Vazquez did not see the officers, but the officers saw both men and that they were armed with firearms. Indeed, Ayala was trying to cock his gun, a Cobrai Model M11, nine millimeter caliber semiautomatic assault weapon, at the time. The officers then detained and arrested the two men. A search of Ayala turned up 153 aluminum-foil covered decks of heroin from his left pocket; his companion had $250. The officers arrested three other men standing nearby; each had a revolver. Experts determined that the heroin weighed 10.94 grams. An expert also testified that Ayala's gun was functioning and capable of firing in semiautomatic mode, and that its serial number was obliterated.

At trial, when the government asked Officer Mulero about his experience with drug points, as a lead-in to Mulero's testimony that Ayala was arrested at a known drug point, defense counsel objected, arguing that this was expert testimony and that because

the government had not given notice of expert testimony from Mulero under Fed. R. Crim. P. 16(a)(1)(G), the witness could not so testify. At a subsequent bench conference, the government made a proffer that the witness would also testify that the particular packaging of the drugs seized showed they were packaged for distribution. Defense counsel countered that the testimony about the nature of the packaging was even more clearly expert testimony. The court ruled that the testimony that Melilla Street was a known drug point was permissible lay testimony. As to the packaging issue, the court ruled it needed to hear foundational evidence and allowed the testimony subject to a motion to strike.

Officer Mulero then testified as to how drug points work generally, stating:

> Basically one individual loads the drug while the other one collects the money, and then you have [men] who are armed and just waiting around in the event other gangs might come by and take action, and then you have others as vigilantes to see if the cops come.

Mulero testified about his experience with Melilla Street as a drug point. He also testified that he had made previous seizures of heroin at drug points, and that the heroin was typically packed in aluminum decks. Officer Mulero was then asked about the packaging of the drugs he seized from the defendant, and replied that the heroin was packaged "[i]n a shape or manner of a deck." Ayala did not later move to strike.

On appeal, Ayala argues that he is entitled to a new trial because two parts of Mulero's testimony, first about how drug points operate and, second, about how heroin is packaged, could only be given by an expert and the government failed to give notice that Officer Mulero would testify as an expert.

As to the testimony concerning how drug points operate, because Ayala timely objected, review is for abuse of discretion. United States v. Balsam, 203 F.3d 72, 84 (1st Cir. 2000). As to the testimony concerning packaging, because the objection was denied conditionally, subject to a later motion to strike, and Ayala made no later motion to strike, review is for plain error. See Wilson v. Williams, 182 F.3d 562, 566-67 (7th Cir. 1999).

The government contends that neither of the two types of testimony (on the nature of drug points and on heroin packaging for distribution) was expert testimony under Fed. R. Evid. 702. We agree with the government that neither type of testimony was expert testimony at all, but was admissible as lay witness testimony under Fed. R. Evid. 701, even after the amendments to the two rules in December 2000. The pre-amendment version of Rule 701 required lay opinion testimony to be "rationally based on the perception of the witness" and "helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." In 2000, Rule 701 was amended to include the additional requirement that testimony admitted under the rule "not [be] based on scientific,

-5-

technical, or other specialized knowledge within the scope of Rule 702." As the advisory committee's notes explain, this amendment was intended "to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing." Fed. R. Evid. 701, advisory committee's note on 2000 amendment. Instead, such expert testimony is subject to the pre-trial disclosure requirements of Fed. R. Civ. P. 26 and Fed. R. Crim. P. 16 and the additional reliability requirements imposed by Fed. R. Evid. 702. Id.; see also Fed. R. Evid. 702, advisory committee's note on 2000 amendment (explaining intent to "provid[e] some general standards that the trial court must use to assess the reliability and helpfulness of proffered expert testimony" in the wake of Kumho Tire Co. v. Carmichael, 526 U.S. 1379 (1999), and Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993)).

We have noted that "[t]he line between expert testimony under Fed. R. Evid. 702 . . . and lay opinion testimony under Fed. R. Evid. 701 . . . is not easy to draw." United States v. Colon-Osorio, 360 F.3d 48, 52-53 (1st Cir. 2004). Indeed, the same witness –- for example, a law enforcement officer –- may be qualified to "provide both lay and expert testimony in a single case." See Fed. R. Evid. 701, advisory committee's note (citing United States v. Figeuroa-Lopez, 125 F.3d 1241, 1246 (9th Cir.

1997)).  In this case, however, the testimony did not cross the line to become expert testimony.

As to the testimony about how drug points operate, Officer Mulero stated that he had investigated, patrolled, or made arrests at drug points on more than 100 occasions.  His testimony stated what occurred at those drug points.  This testimony was based on the requisite personal knowledge under Fed. R. Evid. 602 and also met the requirements of Fed. R. Evid. 701, because it was based on "particularized knowledge that the witness [had] by virtue of his . . . position" as a police officer assigned to patrol the neighborhood.[1]  Fed. R. Evid. 701, advisory committee's note.

Before the 2000 amendments, we had repeatedly noted that "the modern trend favors the admission of [lay] opinion testimony provided it is well founded on personal knowledge and susceptible to cross-examination."  See United States v. Vega-Figueroa, 234 F.3d 744, 755 (1st Cir. 2000) (quoting United States v. Paiva, 892 F.2d 148, 157 (1st Cir. 1989)).  While the 2000 amendments subject testimony falling within the scope of Rule 702 to heightened reliability requirements and rules governing pre-trial disclosure, Officer Mulero's testimony does not trigger these additional safeguards.  It required no special expertise for Officer Mulero to conclude, based on his observations, that places which sell drugs

_____

[1]Defendant relies on the opinion of the Second Circuit in United States v. Cruz, 363 F.3d 187 (2d Cir. 2004), which is inapposite on its facts.

are often protected by people with weapons. The defense could hardly be surprised by Mulero's testimony that Ayala was arrested at a drug point, nor was Ayala disabled from testing the reliability of Mulero's perceptions through cross-examination.

As to the packaging, the officer simply testified to his experience on prior drug arrests that the heroin seized at drug points was "basically packed in . . . aluminum decks," and that in this case the drugs were packaged "[i]n a shape or manner of a deck." The agent's testimony as to what he saw is not expert testimony. See United States v. Santana, 342 F.3d 60, 68 (1st Cir. 2003). The jury was left to draw its own conclusions as to the contents and purpose of the decks, undoubtedly assisted by the fact that the 153 decks seized in this case, when tested, in fact contained heroin.

Challenge to Sentence

The government has conceded that under the rule of United States v. Melendez-Santana, 353 F.3d 93 (1st Cir. 2003), the case should be remanded for adjustment of the portion of Ayala's sentence imposing conditions of supervised release, in order to cure an impermissible delegation of authority to the probation officer over drug testing and drug treatment. We have no reason not to accept this concession.

Ayala tries to ride the concession further, arguing that the term of imprisonment in the sentence is also now open. That is

contrary to <u>Melendez-Santana</u> itself and a long line of cases remanding for limited adjustment of sentences. <u>See</u> <u>Melendez-Santana</u>, 353 F.3d at 108 (remanding for limited adjustment solely of supervised released conditions). A remand to correct a delegation error as to conditions of supervised release does not open up any other aspect of a sentence for resentencing.

Ayala's brief also raised a different sort of sentencing argument. Ayala on appeal for the first time raised an argument that under <u>Apprendi</u> v. <u>New Jersey</u>, 530 U.S. 466 (2000), the issue of exact drug quantity should have been found by the jury. This argument has since been transformed into a <u>Booker</u> argument, due to the Supreme Court's recent decision on the Sentencing Guidelines in <u>United States</u> v. <u>Booker</u>, 125 S. Ct. 738 (2005). This issue was not preserved at the trial court. On its own terms the unpreserved <u>Apprendi</u> argument would have failed pre-<u>Booker</u> -- there would have been no plain error. At sentencing defendant did not, and indeed had no basis to, contest the government's evidence that the heroin weighed 10.94 grams. <u>See</u> <u>United States</u> v. <u>Cotton</u>, 535 U.S. 625, 633-34 (2002) (no plain error under <u>Apprendi</u> when evidence of drug quantity was overwhelming and uncontested at trial).

After the Supreme Court's recent decision in <u>Booker</u>, the question for plain error review is whether defendant has shown a reasonable probability the sentencing judge would, in a non-mandatory Guidelines system, have imposed a more lenient sentence.

See <u>United States</u> v. <u>Antonakopoulos</u>, 399 F.3d 68, 78-79 (1st Cir. 2005).  Ayala cannot meet that standard.  The sixty-month portion of the sentence for the firearm possession was mandated by statute, 18 U.S.C. § 924(c)(1)(A)(i), (D)(ii), and the twenty-four months for drug distribution was centered in the middle of the twenty-one to twenty-seven month range.  We see no reasonable likelihood of a more lenient sentence should the case be remanded.  <u>Antonakopoulos</u>, 399 F.3d at 79.

The conviction is **<u>affirmed</u>**; the sentence is **<u>affirmed</u>** save for that limited portion of the conditions of supervised release relating to drug testing and treatment, which is **<u>remanded</u>** for correction in accordance with this opinion.

**<u>So ordered</u>**.