In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 06-3453

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

PATRICK L. ORIEDO,

*Defendant-Appellant*.

———————

Appeal from the United States District Court
for the Southern District of Illinois.
No. 03 CR 40050—**G. Patrick Murphy**, *Chief Judge.*

———————

ARGUED MAY 3, 2007—DECIDED AUGUST 6, 2007

———————

Before EASTERBROOK, *Chief Judge*, and FLAUM and RIPPLE,
*Circuit Judges*.

RIPPLE, *Circuit Judge.* Patrick Oriedo was convicted of
various offenses related to distribution of crack cocaine and
firearm possession. *See* 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A),
841(b)(1)(C); 18 U.S.C. §§ 922(g)(1), 924(c). He was sen-
tenced to a total of 181 months' imprisonment. He now
claims that the proceedings in the district court were
tainted by the denial of his constitutional right to a speedy
trial and by the admission of certain evidence over his
objection. For the reasons set forth in this opinion, we
affirm the judgment of the district court.

**I**

**BACKGROUND**

On five occasions between June 20 and July 2, 2003, Mr. Oriedo was among those who sold crack cocaine to a confidential source participating in controlled buys orchestrated by law enforcement. Following the last of these buys, the police performed a traffic stop of the car driven by Mr. Oriedo and recovered a revolver from his pocket, additional crack and a significant amount of cash, including $750 in recorded currency from the controlled buys. Mr. Oriedo was arrested and, on July 8, 2003, was charged, along with Antoine Smith, in a single-count indictment that alleged a conspiracy to distribute and to possess with intent to distribute crack in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 846.

Over the next thirty-five months, the Government obtained four superseding indictments against Mr. Oriedo. During the same period, Mr. Oriedo and one of his co-defendants also requested numerous continuances from the district court. We shall examine in detail the course of the pretrial proceedings in the context of our analysis of Mr. Oriedo's speedy trial claim.

When Mr. Oriedo went to trial, the Government introduced, as part of its case-in-chief, the testimony of multiple law enforcement officials involved in the investigation of Mr. Oriedo's offenses. In examining certain of these witnesses, the Government not only asked about their observations during the investigation of Mr. Oriedo, but also posed more general questions about typical drug trafficking practices in the area. With respect to the latter inquiries, Mr. Oriedo objected on the ground that such testimony should be treated as expert testimony and,

therefore, should have been the subject of the expert disclosure provision of Federal Rule of Criminal Procedure 16. The district court admitted certain of this testimony over Mr. Oriedo's objection; it determined that it was lay testimony governed by Federal Rule of Evidence 701 rather than expert testimony within the meaning of Rule 702. We shall discuss the district court's rulings and the specific evidence admitted in our analysis of Rule 16 and its effect on these proceedings.

## II

## DISCUSSION

### A. Speedy Trial

Mr. Oriedo first claims that the course of his pretrial proceedings denied him his constitutional right to a speedy trial. *See* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ."). The Government counters that Mr. Oriedo has waived any speedy trial objection. The Government further maintains that, on the merits, a speedy trial claim fails because Mr. Oriedo himself is responsible for a substantial portion of the 35 month delay between his original indictment and his trial.

### 1.

Before the district court, Mr. Oriedo did not assert, at every possible opportunity, his constitutional right to a speedy trial. As we shall discuss in more detail later, the record reveals that, in three years of pretrial proceedings, he twice indicated his desire to oppose any further delays. Also, in his final motion to sever his trial from that of his

co-defendants, he made a single specific reference to his constitutional right to a speedy trial. In the Government's view, although Mr. Oriedo raised the claim, his failure to press it vigorously or to set forth specific arguments in support of this claim amounts to waiver.

In *Barker v. Wingo*, 407 U.S. 514 (1972), the Supreme Court noted the unique analytical problem presented by the constitutional right to a speedy trial.[1] Put simply, it is difficult to determine precisely when, in the course of protracted pretrial proceedings, delay amounts to a constitutional violation. *See id.* at 521. It is also difficult to identify with any precision when the defendant had the obligation to object to the violation. Therefore, the right is ill-suited to rigid forfeiture rules. *See id.* at 528 (rejecting a rule "that a defendant who fails to demand a speedy trial forever waives his right"). The "better rule is that the defendant's assertion of or failure to assert his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of the right." *Id.* This approach, said the Court, avoids the possible unfairness that might result from an overly rigid application of a forfeiture rule and permits the trial court the needed discretion in assessing the particular circumstances in the case before it. *See id.* at 528-29.[2] Nevertheless, despite the

---

[1] Mr. Oriedo bases his speedy trial claim on the Constitution only. The Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*, is not at issue in this case.

[2] We have noted that the Supreme Court's statements in *Barker* express an "extreme reluctance" to find waiver of the speedy trial right. *See United States ex. rel. Fitzgerald v. Jordan*, 747 F.2d 1120, 1127 (7th Cir. 1984). Accordingly, it is not surprising that
(continued...)

---

[2] (...continued)
we have not had any occasion to apply plain error review to constitutional speedy trial claims.

Nevertheless, as we have acknowledged recently in *United States v. Luepke*, ___ F.3d ___, No. 06-3285, slip op. at 5-10 (7th Cir. July 24, 2007), plain error review is generally appropriate for claims not pressed to the district court, *see* Fed. R. Crim. P. 52(b); *United States v. Olano*, 507 U.S. 725, 732 (1993), and this rule applies even where, as here, the protection of the right during trial is not the sole responsibility of the defendant, *see Barker v. Wingo*, 407 U.S. 514, 527 (1972). *See also United States v. Vonn*, 535 U.S. 55 (2002) (applying plain error review to a district court's violation of Rule 11 of the Federal Rules of Criminal Procedure). There well may be instances when plain error analysis would be appropriate in the speedy trial context. *Cf. United States v. Serna-Villarreal*, 352 F.3d 225, 231 (5th Cir. 2003) (reviewing for plain error the defendant's claim that a violation of the constitutional right to a speedy trial resulted in actual prejudice); *United States v. Sorrentino*, 72 F.3d 294, 297 (2d Cir. 1995) (reviewing *both* statutory and constitutional speedy trial claims for plain error where no motion to dismiss was filed in the district court); *United States v. Gomez*, 67 F.3d 1515, 1521 (10th Cir. 1995) (reviewing constitutional speedy trial claim for plain error where the issue was not raised at all before the district court). However, we see no reason why the specific circumstances of Mr. Oriedo's case warrant treatment outside the general approach set by the Supreme Court in *Barker.* Certainly, a limited assertion on the part of the defendant should not be treated as a waiver—an *intentional* relinquishment of a known right, *see Johnson v. Zerbst*, 304 U.S. 458, 464 (1938). Nor can we say, assuming plain error is appropriately applied to speedy trial claims not raised in the district court, that Mr. Oriedo had forfeited his claim by failing to bring a motion to dismiss based on a Sixth Amendment violation. *Cf. United States*

(continued...)

difficulty of pinpointing an appropriate time of forfeiture, a defendant has *some* responsibility to assert the right. *See id.* at 528. As we shall discuss in more detail later, just as we give significant weight to the defendant's assertion of the right, a failure to assert it "will make it difficult for a defendant to prove that he was denied a speedy trial." *Id.* at 532. The Supreme Court explicitly has made the quality of the defendant's assertion of the right not just a factor in the analysis, but one entitled to significant weight and one without which the claim will be difficult to prove. *See id.* Accordingly, although we cannot accept the Government's suggestion that Mr. Oriedo's failure to object persistently justifies our finding the issue waived or forfeited, significant weight must be given to that conduct in assessing his speedy trial claim.

## 2.

We now turn to the merits of Mr. Oriedo's speedy trial claim. The principles that guide our analysis are well-

---

2 (...continued)
*v. White*, 443 F.3d 582, 588-91 (7th Cir. 2006) (noting that, where the defendant had never raised a speedy trial claim in the district court, the Speedy Trial Act decreed that his statutory right was "waived," but reviewing the constitutional claim without suggesting that plain error was the appropriate standard). Mr. Oriedo's three assertions, at various times in the trial process, of his desire to oppose future continuances and proceed to trial sufficiently alerted the court and the Government that the delay in the proceedings was a potential issue. *See id.* at 590 (holding that the defendant "asserted his right" by objecting to the first continuance, even though later joining in the Government's request for a further continuance).

settled under the standard set forth in *Barker*. As we recently have stated,

> [i]n considering a defendant's Sixth Amendment speedy trial challenge, we apply the following four-part test: "whether delay before trial was uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result."

*United States v. White*, 443 F.3d 582, 589 (7th Cir. 2006), *cert. denied*, 75 U.S.L.W. 3173 (U.S. Oct. 2, 2006) (No. 06-5782), (quoting *Doggett v. United States*, 505 U.S. 647, 651-52 (1992)).

**a.**

The first factor, the length of delay, acts as a triggering mechanism; unless a presumptively prejudicial amount of time elapsed in the district court, it is unnecessary to conduct a searching analysis of all the factors. *Barker*, 407 U.S. at 530. We have considered delays that approach one year presumptively prejudicial, *see White*, 443 F.3d at 589-90; *see also Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992). In this case, nearly three years passed from original indictment to trial. Therefore, full review of the *Barker* factors is appropriate. In determining the weight to give the length of the delay, we must look to the extent to which it exceeds the minimum necessary to trigger the analysis. *Doggett*, 505 U.S. at 652. In this case, a period of three years is significantly more than the length necessary to trigger the analysis, and, therefore, this factor weighs in Mr. Oriedo's favor.

**b.**

The second *Barker* factor, the reason for the delay, is "[t]he flag all litigants seek to capture." *United States v. Loud Hawk*, 474 U.S. 302, 315 (1986). In order to analyze this factor with precision, we must examine in detail the course of Mr. Oriedo's pretrial proceedings.

The original indictment, handed down on July 8, 2003, charged Mr. Oriedo and his co-defendant Smith with a single count of conspiracy to distribute and to possess with intent to distribute crack cocaine. Between July 8, 2003 and June 19, 2004, Smith requested and was granted five continuances. The court also continued the case for three months in light of the Government's return of a superseding indictment. At the status conference in which Smith requested his final continuance, Mr. Oriedo's attorney stated that her client opposed further continuances and wished to proceed to trial. *See* Tr. 2 at 2 (Apr. 26, 2004). Nonetheless, roughly a week later, Mr. Oriedo requested and was granted a six-week continuance of the rescheduled status conference.

At the June 14, 2004 status conference, Smith pleaded guilty to Count I of the indictment. In light of the simultaneous withdrawal of Mr. Oriedo's attorney for a conflict of interest, the court continued the trial once, and again three consecutive times on the motion of Mr. Oriedo's new attorney, to December 6, 2004.[3] On November 18, 2004, roughly two weeks before the trial date as it then stood, the Government returned a second superseding indictment

---

[3] The minute order entered at the November 8, 2004 status conference notes that Mr. Oriedo "states [that] he wishes to proceed to trial." R.78.

adding five counts of knowingly and intentionally distributing cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). Mr. Oriedo moved to continue the proceedings to prepare for trial on the additional charges, and a final pretrial conference was rescheduled for February 7, 2005.

In January 2005, before the scheduled pretrial conference, Mr. Oriedo's second attorney withdrew for personal reasons. While Mr. Oriedo was represented by his third attorney, the court granted a series of continuances, on Mr. Oriedo's request, for trial preparation, time to review a Government motion for notice of an alibi defense and to accommodate counsel's own scheduling conflict. Consequently, the trial date was set for July 11, 2005.

On June 21, 2005, the Government filed a third superseding indictment, amending the original conspiracy count to allege that it involved at least 50 grams of cocaine base. Mr. Oriedo's counsel moved to continue in light of additional discovery presented by the Government. Trial was set for September 2005, and continued an additional month by the court because of the judge's illness.

In early September, Mr. Oriedo sought and was granted leave to file an amended motion to suppress certain evidence. Consequently, new briefing began, including a round of supplemental briefs[4] initiated by the Government; a hearing was held on the motion on January 23, 2006, and

---

[4] In one of Mr. Oriedo's multiple briefs to the district court, he objected that the Government had delayed trial by "an innumerable amount of superseding indictments" in what he characterized as "a straightforward case involving hand-to-hand sales and possession of a firearm." R.154 at 1.

the motion was denied on February 13, 2006. Mr. Oriedo requested and received a further continuance, which the court granted. Trial was reset for May 30, 2006, and the case transferred from one judge's docket to another.

The Government then returned a fourth superseding indictment on May 19, 2006, adding an additional co-conspirator. Mr. Oriedo moved to sever his trial and keep his May 30, 2006 trial date. His motion was granted and trial proceeded as scheduled.

As the foregoing demonstrates, the district court ordered no fewer than twenty continuances over a three-year period. Mr. Oriedo's opening brief to this court acknowl-edges that of these, four were granted on the court's own motion and five were at the request of Smith prior to his plea agreement. The Government sought only one con-tinuance, while Mr. Oriedo himself requested a continu-ance on *eleven* separate occasions. Although this summary might seem to demonstrate rather clearly that Mr. Oriedo was primarily responsible for the delay, he disagrees. He urges this court to hold the Government responsible for delays that *he* requested following each of the multiple superseding indictments and the withdrawal of two of Mr. Oriedo's appointed attorneys. With respect to the multiple indictments, Mr. Oriedo contends that we should infer impermissible motives on the part of the Government, namely, an intent to delay and to harass Mr. Oriedo. He bases his claim entirely on what he con-siders to be relatively minor changes between the indict-ments. We note that Mr. Oriedo has not presented us with any support in the case law that allows the serious charge of misconduct that he levels at the Government to be established by weak inferences alone. Without more, we cannot accept his suggestion that the Government's

approach was occasioned by improper motive.[5]

Assuming, without evidence to the contrary, that the Government's motive was proper, our own review of the relevant precedent reveals no clear consensus on the appropriate treatment of the ordinary delays occasioned by superseding indictments in constitutional speedy trial claims. *See, e.g.*, *United States v. Gregory*, 322 F.3d 1157, 1161-62 (9th Cir. 2003) (noting that the court did not "condone" the delay in bringing a superseding indictment, but finding that, because the Government-occasioned delay was merely negligent, it did not weigh "heavily" against the Government) (quoting *Barker*, 407 U.S. at 531); *United States v. Antwine*, 873 F.2d 1144, 1149-50 (8th Cir. 1989) (attributing a delay occasioned by defense counsel's request for a continuance to prepare for trial on charges in a superseding indictment to the defendant, not the Government); *United States v. Netterville*, 553 F.2d 903, 914-15 (5th Cir. 1977) (not charging delay in superseding indictment to the Government, concluding that such delays were justifiable rather than negligent, particularly in light of the complexity of the case).

We need not decide the appropriate treatment of delays occasioned by superseding indictments, however, because, even if we were to conclude that every such delay should be charged to the Government, Mr. Oriedo remains responsible for multiple additional and significant delays. He relies on no precedent to support his view that, after new counsel was appointed for him, the delays to prepare

---

[5] We note that there is no allegation that the Government acted in bad faith in making the substantive changes to the charges against Mr. Oriedo by bringing the subsequent indictments. *See Doggett v. United States*, 505 U.S. 647, 656 (1992).

his defense should be charged to the Government. These delays were substantial, amounting to nearly six months in 2004, and several additional months in 2005. Further, to address his final motion to suppress in September 2005, the court allowed briefing and a hearing. After finally denying the suppression motion, the court granted Mr. Oriedo's own further request for a continuance. These continuances surrounding Mr. Oriedo's suppression motion delayed the proceedings roughly nine additional months. Moreover, the delays occasioned by his co-defendant's motions, amounting to a year, are at best neutral and not chargeable to the Government simply because it elected to try together both defendants involved in a single conspiracy. Under these circumstances, we cannot conclude that the Government is substantially more at fault in the trial delays than was Mr. Oriedo. Accordingly, even if we were to conclude that this factor weighs against the Government because of the multiple superseding indictments, it would not weigh heavily in our final analysis.

**c.**

The third *Barker* factor is the defendant's assertion of the right. In this case, Mr. Oriedo never filed a motion for a speedy trial or a motion to dismiss the indictment for a speedy trial violation. As we have noted, he did make statements on three occasions that could be construed as asserting the right, twice in 2004 and once in his motion to sever in 2006. In his early assertions, he simply stated that he opposed all continuances (April 2004) and that he wished to proceed to trial (November 2004). However, Mr. Oriedo later sought numerous continuances for myriad reasons and filed at least one substantive motion

that substantially delayed his trial. *See United States v. Taylor*, 196 F.3d 854, 862 (7th Cir. 1999) (noting that simultaneous assertion of the right and requests for delay makes any demand "entitled to little, if any, weight"); *see also White*, 443 F.3d at 590-91 (noting that when the right is asserted only after a significant period of delay it does not weigh strongly in a defendant's favor). Given this sequence of events, we cannot say that this factor weighs in favor of Mr. Oriedo.

### d.

The fourth *Barker* factor is prejudice to the defendant. We must examine the circumstances of this case in light of the interests the right is intended to protect: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that defense will be impaired." *Id.* at 591 (citing *Barker*, 407 U.S. at 532) (internal quotation marks omitted). Actual prejudice to the defense is the "most serious" concern raised by a delay because it may "skew[] the fairness of the entire system."[6] *Doggett*, 505 U.S. at 654. Mr. Oriedo concedes that he suffered no particular prejudice to his

---

[6] Mr. Oriedo contends that no showing of prejudice should be necessary because this court should apply the Supreme Court's recent holding in *United States v. Gonzalez-Lopez*, 126 S. Ct. 2557, 2562 (2006), and hold that a violation of the speedy trial right is complete without a showing of prejudice. *Gonzalez-Lopez* does not concern the speedy trial right but the right to counsel of choice. The controlling Supreme Court precedent interpreting the right to a speedy trial has deemed the existence of prejudice an appropriate factor to be weighed in determining whether a constitutional violation has occurred. *See Barker*, 407 U.S. at 532.

defense by the delay. The record certainly supports his concession. As we have just noted, many of the continuances were sought by the defense for trial preparation or for late defense motions.

The Supreme Court has rejected the view that a showing of prejudice is necessary in *all* circumstances, *Moore v. Arizona*, 414 U.S. 25, 26 (1973), and has acknowledged that, in some circumstances, prejudice may be presumed. *See Doggett*, 505 U.S. at 655 ("[E]xcessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify."). This presumed prejudice, although insufficient to carry a speedy trial claim absent a strong showing on the other *Barker* factors is nonetheless "part of the mix of relevant facts" in the ultimate balancing analysis. *Id.* at 655-56.

In addition to presumed prejudice bearing on the fairness of the proceedings themselves, the Supreme Court repeatedly has admonished courts that prejudice in the presentation of a defense is not the only kind of prejudice that a defendant may demonstrate in support of a speedy trial claim. *See United States v. Marion*, 404 U.S. 307, 320 (1971) (noting that delay "may seriously interfere with the defendant's liberty, . . . may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends"); *see also Barker*, 407 U.S. at 532-33 ("The time spent in jail awaiting trial has a detrimental impact on the individual. It often means loss of a job; it disrupts family life; and it enforces idleness. Most jails offer little or no recreational or rehabilitative programs. The time spent in jail is simply dead time." (footnote omitted)). Mr. Oriedo's three years of pretrial confinement no doubt created some of this sort of prejudice.

We are not without guidance on the weight to give such prejudice when balancing all the *Barker* factors to determine whether the conduct of the proceedings violated a defendant's Sixth Amendment rights. We recently have stated that

> [s]ignificant pretrial incarceration may support a presumption of prejudice, but this prejudice[,] unenhanced by tangible impairment of the defense function and unsupported by a better showing on the other factors than was made here, does not alone make out a deprivation of the right to [a] speedy trial.

*White*, 443 F.3d at 591 (internal quotation marks and citation omitted) (final modification in original). Although the delay in this case was substantial, the fault for that delay is shared. Like the defendant in *Barker* itself, Mr. Oriedo did not unambiguously or consistently assert his right to a speedy trial, instead allowing continuances to be granted without objection and indeed requesting the better part of all continuances himself. Weighing these factors alongside the type of prejudice Mr. Oriedo suffered, and viewed in the context of the trial record as a whole, we have little difficulty concluding that Mr. Oriedo has not demonstrated a denial of his Sixth Amendment right to a speedy trial.

## B. Evidentiary Issues

Mr. Oriedo also claims that the district court erroneously admitted expert testimony that had not been disclosed to the defense despite a pre-trial request under Federal Rule

of Criminal Procedure 16(a)(1)(G)[7] and a motion in limine to bar undisclosed expert testimony. Specifically, the Government introduced testimony of two law enforcement officials involved in the investigation of Mr. Oriedo's offenses, over Mr. Oriedo's objection that they were undisclosed expert witnesses. In each case, the court allowed the questioning to proceed, but requested further support from the Government that no expert disclosure was required under the circumstances. After reviewing the Government's submissions,[8] the court made an oral ruling that the evidence should be admitted as lay testimony under Rule 701[9] without the necessity of disclosure.

---

[7] Federal Rule of Criminal Procedure 16(a)(1)(G) provides:

**Expert witnesses.—**At the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial. If the government requests discovery under subdivision (b)(1)(C)(ii) and the defendant complies, the government must, at the defendant's request, give to the defendant a written summary of testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial on the issue of the defendant's mental condition. The summary provided under this subparagraph must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications.

[8] The record does not disclose the content of these submissions.

[9] Federal Rule of Evidence 701 provides:

If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to

(continued...)

Tr. 4 at 336 (May 31, 2006). We now shall review each witness' testimony.

**1.**

Mr. Oriedo first objects to the testimony of Agent Stan Reno. Agent Reno had worked surveillance over certain of the controlled buys for which Mr. Oriedo was tried. *See* Tr. 3 at 56 (May 30, 2006). In his direct examination by the Government, Agent Reno described his own role in a buy on June 27, 2003. He testified that, after observing the buyer arrive at the appointed meeting place, he saw two additional cars follow each other to the same location. He was asked by the Government whether, "as a surveillance agent," this sequence of events "raise[d] any red flags" with him. *Id.* Agent Reno testified that he became concerned in watching a second vehicle arrive because "that indicates to us that there is what is called counter-surveillance occurring and they are looking for law enforcement." *Id.* at 57. Mr. Oriedo objected that this was an undisclosed expert opinion. The Government withdrew the question and rephrased: "Were you personally concerned about there being two vehicles?" *Id.* Agent Reno responded that he was, and, when asked why, he stated that "more than one vehicle . . . raises concerns about

---

[9]  (...continued)

those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) *not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.*

(emphasis added).

being countersurveillance [sic]." *Id.* The court ruled that Agent Reno's testimony on these matters was admissible.

We see no error in the admission of Agent Reno's testimony as lay testimony under Rule 701. Although Agent Reno's specialized knowledge informed his mental state, he was not called upon to testify generally about narcotics counter-surveillance practices or to offer an explicit opinion that what he observed was counter-surveillance. *Cf. United States v. Parra*, 402 F.3d 752, 758-59 (7th Cir. 2005) (approving of expert testimony that both addressed counter-surveillance practices generally and opined that the defendant's apparently innocent activities during a drug deal were consistent with a role in counter-surveillance). Agent Reno was asked about his own state of mind while observing this particular drug deal; in response, he reported his state of mind and his observations on the day in question. Accordingly, the district court was correct in concluding that the expert disclosure rules did not apply to this testimony.

**2.**

The district court also admitted the testimony of Agent Dave Gourley over Mr. Oriedo's objection. Agent Gourley had participated in surveillance of the controlled buys, in the traffic stop and arrest of Mr. Oriedo and in a subsequent search of a hotel room where Mr. Oriedo had been staying. Agent Gourley testified as to the relevant contents of the hotel room, mentioning, among other items, plastic baggies left on an ironing board. The Government asked Agent Gourley about "the significance of the baggies with the corners cut off," and Agent Gourley responded, "[t]hat's usually the way drug dealers will

package the crack cocaine for resale." Tr. 3 at 124. After asking Agent Gourley to identify certain Government exhibits, one of which involved the baggies, the Government asked Agent Gourley again if he could "tell the ladies and gentlemen of the jury how those baggies . . . are used." *Id.* at 125. This time, Mr. Oriedo objected that the question called for undisclosed expert testimony. The Government offered to rephrase, and ultimately asked Agent Gourley how, based on his own observations, crack cocaine is packaged for distribution in the corner of a baggie. He responded:

> They will take a small baggie and cut or tear the corner where it makes a longer end. . . . They'll take corners of baggies either cut or torn away and they'll place cocaine, crack cocaine, whatever type of drug they're selling they'll twist the baggie and tie it in a small knot or heat seal it.

*Id.* at 126.

This testimony, although ostensibly couched as a matter of Agent Gourley's direct observation, fits squarely within this court's precedent defining *expert* testimony by officers as to matters within their experience observing narcotics trafficking practices. *See United States v. Glover*, 479 F.3d 511, 516 (7th Cir. 2007) ("[B]ecause the clandestine nature of narcotics trafficking is likely to be outside the knowledge of the average layman, law enforcement officers may testify as experts in order to assist the jury in understanding these transactions." (internal quotation marks omitted) (modification in original)); *United States v. Brumley*, 217 F.3d 905, 910-11 (7th Cir. 2000) (approving of expert opinion of an agent, based on observation, that packaged quantity was a dealer, not user, quantity of methamphetamine); *United States v. Navarro*, 90 F.3d 1245,

1260 (7th Cir. 1996) (reviewing challenge to expert testimony "that baggies, with the corners cut, were a way of packaging drugs"). Agent Gourley's testimony was not limited to what he observed in the search or to other facts derived exclusively from this particular investigation; instead, he brought the wealth of his experience as a narcotics officer to bear on those observations and made connections for the jury based on that specialized knowledge. Several of our sister circuits have examined similar law enforcement testimony under the same expert witness rubric. *See United States v. Hopkins*, 310 F.3d 145, 150-51 (4th Cir. 2002); *see also United States v. Watson*, 260 F.3d 301, 307 (3d Cir. 2001) (collecting cases from the Second, Fifth, Eighth and Ninth Circuits holding "the operations of narcotics dealers [to be] a proper field of expertise"); *United States v. Figueroa-Lopez*, 125 F.3d 1241, 1245-46 (9th Cir. 1997) (disagreeing with the district court's conclusion that certain details of narcotics trafficking practices were "common enough and require such a limited amount of expertise . . . that they can . . . be deemed lay witness opinion").[10]

---

[10] The Government urges this court to adopt the contrary approach outlined by the First Circuit in *United States v. Ayala-Pizarro*, 407 F.3d 25, 28-29 (1st Cir. 2005), *cert. denied*, 74 U.S.L.W. 3209 (U.S. Oct. 3, 2005) (No. 05-5436). The court held that, where an officer's testimony as to narcotics packaging was based on his personal knowledge acquired from experience in investigating drug trafficking, it was not technical or specialized within the meaning of Rule 701's limitations, but was simply particularized lay testimony. We are not persuaded by the reasoning employed in this case.

First, we note that the Advisory Committee Notes to Rule 701 themselves cite with approval *United States v. Figueroa-Lopez*, 125

(continued...)

We therefore agree with Mr. Oriedo's claim that the district court's characterization of Agent Gourley's testimony as lay witness testimony was incorrect. Accordingly, the testimony should have been subject to the disclosure required by Federal Rule of Criminal Procedure 16(a)(1)(G).

We cannot agree, however, that Mr. Oriedo is entitled to reversal because the district court admitted the testimony without the appropriate disclosure. The Rules themselves provide a panoply of remedies from which a district court, recognizing non-compliance with the disclosure rule, may choose. *See* Fed. R. Crim. P. 16(d)(2) (listing possible

---

[10] (...continued)
F.3d 1241, 1246 (9th Cir. 1997), for the proposition that law enforcement testimony that particular conduct is consistent with drug trafficking should be viewed as expert testimony within Rule 702, because to view it as lay testimony "subverts" the disclosure requirements for expert testimony. Fed. R. Evid. 701 (Advisory Committee's Note). We also conclude that *Ayala-Pizarro* confuses the Note's reference to the kind of "particularized knowledge" that a lay person may have of the value of their own business with the kind of "specialized knowledge" that brings testimony within Rule 702. The business owner has knowledge of his own business *in the particular*; a narcotics officer who draws on his broad experience, acquired from his observations outside of this particular case, relies on his *specialized* knowledge of drug trafficking to draw conclusions about the particular case. Finally, under the First Circuit's reading of the Rules in *Ayala-Pizarro*, a substantial argument could be made that anyone who acquires broad knowledge of a topic through *direct experience* would qualify as a lay witness; Rule 702 itself, however, specifically defines a witness' qualification as an *expert* to arise because of "knowledge, skill, *experience*, training or education." Fed. R. Evid. 702 (emphasis added).

sanctions, including exclusion and "any other order that is just under the circumstances"). Several of these remedies fall short of outright exclusion of the evidence. *See United States v. Duvall*, 272 F.3d 825, 829 (7th Cir. 2001).

Even if we were to conclude that some unique circumstance present in this case made full exclusion the *only* appropriate remedy for the discovery violation, we still would not reverse the conviction on that basis if the error were harmless. *Id.* Although Mr. Oriedo makes the blanket assertion that he was deprived of an opportunity to cross-examine adequately Agent Gourley or prepare a defense, before this court he questions neither the accuracy of the statements offered nor the qualifications of Agent Gourley to make them. Moreover, our review of the record demonstrates that the packaging testimony offered by Agent Gourley was cumulative of Agent Reno's own testimony on crack packaging techniques, which had been introduced without objection. *See* Tr. 3 at 61. Under these circumstances, the error in classifying Agent Gourley's testimony as lay and in failing to subject it to the disclosure requirements was harmless.

## Conclusion

We conclude that Mr. Oriedo has not demonstrated that his Sixth Amendment right to a speedy trial was violated. We further conclude that any error committed by the district court in failing to subject certain of the Government's evidence to the disclosure requirements in the Federal Rules was harmless. Accordingly, we affirm the district court's judgment of conviction.

AFFIRMED

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*