LIPEZ, Circuit Judge,
concurring.
Bound by the precedents of our circuit, my colleagues and I must affirm the ruling of the trial court that Special Agent Carpio’s testimony about the cell phone practices of drug traffickers was lay opinion testimony admissible under Rule 701, rather than expert testimony governed by Rule 702. However, we should reexamine these precedents in a future en banc proceeding.[15]
The government elicited the challenged testimony from Agent Carpió by asking, “[H]ow, if in any way, according to your experience as a narcotics investigator ... does a telephone number registered in the name of a person compare with the practice of money traffickers of putting their telephone numbers in the names of third parties?” Carpió responded:
Based on my training and experience, whenever traffickers utilize cell phones, they try to disguise names by placing it into somebody else’s name, or there are phone companies that allow you to give names without any proper identification. Therefore, masking the real user of the telephone.
(Emphasis added.) The majority concludes that Carpio’s testimony “fall[s] comfortably within the boundaries of permissible lay opinion testimony”:
It required no scientific or technical expertise within the scope of Rule 702 for Carpió to conclude, based on his experience in prior drug investigations, that traffickers often list unrelated third parties as their telephones’ subscribers, and that, in this case, the phone account at issue was organized under a similar scheme. Such testimony was a product of Carpio’s requisite personal knowledge, see Fed.R.Evid. 602, and also met the requirements of Rule 701 because it was derived from “particularized knowledge that [Carpió had obtained] by virtue of his ... position” as a drug enforcement agent tasked with investigating the De Sousa narcotics ring, Fed. R.Evid. 701, Advisory Committee’s note.
(Emphasis added.) The underlined language reflects two flaws in our circuit’s analysis of the difference between lay and expert opinion testimony. These flaws, discussed in Part II, have put us at odds with virtually every other circuit[16] and the *57 commentary to Rule 701 of the Advisory Committee on Evidence.
This is not an occasion for examining at length the incorrectness of our approach to the lay/expert opinion dichotomy and the unfairness that results for criminal defendants. That should be done in a future en banc proceeding or in a case where the dichotomy affects the outcome of the case. Here, I just want to highlight and explain the problem, beginning with some background facts, in the hope of eventually changing our law.
I. The 2000 Amendments to the Federal Rules of Evidence
In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the Supreme Court addressed the basic requirements for admitting expert testimony, rejecting what was then the framework for deciding whether expert testimony was admissible — the so-called Frye test of general acceptance in the particular field. See Frye v. United States, 293 F. 1013 (D.C.Cir.1923). The Daubert Court held that the adoption of Rule 702 had rendered the Frye test obsolete.[17] Daubert, 509 U.S. at 588-89,113 S.Ct. 2786. Because the drafters did not cite Frye or use its “general acceptance” language, the Court concluded that they did not intend to adopt its test for admissibility. Id. The Court found that the Frye standard was “absent from, and incompatible with, the Federal Rules of Evidence” and “should not be applied in federal trials.” Id. at 589, 113 S.Ct. 2786.
The Daubert Court emphasized that “under the Rules the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.” Id. at 589, 113 S.Ct. 2786. It found that Rule 702 contained implicit safeguards for reliability, based on the drafters’ use of the terms “scientific” and “knowledge.” These two terms, the Court found, require a certain level of reliability from all expert testimony. Id. at 590, 113 S.Ct. 2786. The Court set out five nonexclusive factors for trial courts to consider when determining whether such testimony meets the implicit reliability requirements of Rule 702: (1) whether the expert’s technique or theory can be or has been tested; (2) whether the technique or theory has been subject to peer review and publication; (3) what the known or potential rate of error of the technique or theory is when applied; (4) whether the expert maintained standards or controls; and (5) whether the technique or theory has been generally accepted in the scientific community. Id. at 593-95, 113 S.Ct. 2786. Subsequently, in its 1999 decision in Kumho Tire Co. v. Carmichael, the Court stated that trial courts should apply a Daubert-style analysis to all expert testimony, not just testimony based explicitly on science. 526 U.S. 137, 149, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).
*58 Rule 702[18] was then amended in 2000 to incorporate the inquiry trial courts must undertake pursuant to Daubert and Kumho and thereby enhance the reliability of expert testimony. At that time, the rule drafters were aware of a federal case law trend in the 1980s that blurred the distinction between lay opinion testimony and expert testimony. Increasingly, lay witnesses were permitted to offer opinions on matters that required at least some amount of specialized knowledge or experience. See, e.g., United States v. Paiva, 892 F.2d 148 (1st Cir.1989) (finding no abuse of discretion where lay witness identified a substance as cocaine based on past experience with the taste and appearance of the substance); Soden v. Freightliner Corp., 714 F.2d 498 (5th Cir.1983) (allowing lay witness opinion testimony that a certain truck design was dangerous and defective based on witness’s 18 years of experience in the trucking industry). The drafters realized that this jurisprudence allowing more and more opinion testimony under Rule 701[19] threatened to undermine the safeguards set forth in Rule 702 to enhance the reliability of expert testimony. If lay witnesses could offer the same types of opinion testimony as experts, there would be a significant incentive for attorneys to circumvent the rigorous Daubert framework incorporated in Rule 702 and bring opinion testimony in under Rule 701. Hence, the drafters added a provision to Rule 701, now codified as Rule 701(c), stating that lay opinion testimony is inadmissible if it is “based on scientific, technical or other specialized knowledge within the scope of Rule 702.” The Advisory Committee explained that the purpose of this amendment was to “eliminate the risk that the reliability requirement set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing.” Fed.R.Evid. 701 advisory committee’s notes.
II. Our Circuit’s Interpretation of the 2000 Amendments
Regrettably, our precedents have abetted the very risk that the Advisory Committee sought to avoid. That is so because we have misunderstood the significance of language from the Rules and the Advisory Committee’s notes in at least two ways. First, we have classified officer testimony based on law enforcement experience as lay opinion testimony because officers base such testimony on knowledge “personally acquire[d] through experience, often on the job.” United States v. Maher, 454 F.3d 13, 23 (1st Cir.2006). Such testimony, however, is precisely the sort of testimony based on “knowledge, skill, experi *59 ence, training, or education” contemplated by Rule 702. Fed.R.Evid. 702 (emphasis added).
Second, we have misread language from the Advisory Committee’s notes. The notes describe business owners providing lay testimony about “the value or projected profits of the business, ... not because of experience, training or specialized knowledge within the realm of an expert, but because of the particularized knowledge that the witness has by virtue of his or her position in the business.” Fed. R.Evid. 701 advisory committee’s notes. We have ignored the limiting language of the Advisory Committee’s notes and applied the “by virtue of his or her position” language to generalized police testimony about, for example, the regular practices of drug traffickers. See United States v. Ayala-Pizarro, 407 F.3d 25, 28-29 (1st Cir.2005) (classifying general testimony about how drug operations work as lay testimony “because it was based on ‘particularized knowledge that the witness [had] by virtue of his ... position’ as a police officer assigned to patrol the neighborhood” (emphasis added) (quoting Fed. R.Evid. 701 advisory committee’s notes)).[20]
The Seventh Circuit ably described the flaws in our analysis when it rejected our interpretation of Rules 701 and 702 in United States v. Oriedo, 498 F.3d 593, 603 n. 10 (7th Cir.2007):
The Government urges this court to adopt the contrary approach outlined by the First Circuit in United States v. Ayala-Pizarro, 407 F.3d 25, 28-29 (1st Cir.2005), cert. denied, 546 U.S. 902, 126 S.Ct. 247, 163 L.Ed.2d 226 (2005). The court held that, where an officer’s testimony as to narcotics packaging was based on his personal knowledge acquired from experience in investigating drug trafficking, it was not technical or specialized within the meaning of Rule 701’s limitations, but was simply particularized lay testimony. We are not persuaded by the reasoning employed in this case.
First, we note that the Advisory Committee Notes to Rule 701 themselves cite with approval United States v. Figueroa-Lopez, 125 F.3d 1241, 1246 (9th Cir.1997), for the proposition that law enforcement testimony that particular conduct is consistent with drug trafficking should be viewed as expert testimony within Rule 702, because to view it as lay testimony “subverts” the disclosure requirements for expert testimony. Fed.R.Evid. 701 (Advisory Committee’s Note). We also conclude that Ayala-Pizarro confuses the Note’s reference to the kind of “particularized knowledge” that a lay person may have of the value of their own business with the kind of “specialized knowledge” that brings testimony within Rule 702. The business owner has knowledge of his own business in the particular; a narcotics officer who draws on his broad experience, acquired from his observations outside of this particular case, relies on his specialized knowledge of drug trafficking to draw conclusions about the particular case. Finally, under the First Circuit’s reading of the Rules in Ayala-Pizarro, a substantial argument could be made that anyone who acquires broad knowledge of a topic through direct experience would qualify as a lay witness; Rule 702 itself, however, specifically defines a witness’ qualification as an expert to arise because of “knowledge, skill, experience, training or education.” Fed.R.Evid. 702 (emphasis added).
*60 As the Seventh Circuit has aptly noted, the explicit language of Rule 702 sets forth a bright line rule. If a witness has acquired “specialized knowledge” on the basis of “knowledge, skill, experience, training or education,” and presents that knowledge to a jury “in the form of an opinion or otherwise,” that witness is testifying as an expert witness, Fed.R.Evid. 702, who is subject to the disclosure requirements for expert testimony.[21] In the absence of such disclosure, opposing counsel are denied an opportunity to secure their own experts or immerse themselves in the area of expertise and develop a meaningful cross-examination. The result may be the presentation of expert testimony by a lay witness whose reliability is not meaningfully tested.
In this case, as noted, the government asked Agent Carpió “[H]ow, if in any way, according to your experience as a narcotics investigator ... does a telephone number registered in the name of a person compare with the practice of money traffickers of putting their telephone numbers in the names of third parties?” This question asked him to give his opinion on whether the particular conduct of the defendant in this case was consistent with drug trafficking generally. To answer this question, he drew on specialized knowledge that he acquired from years of experience investigating drug cases:
Based on my training and experience, whenever traffickers utilize cell phones, they try to disguise names by placing it into somebody else’s name, or there are phone companies that allow you to give names without any proper identification. Therefore, masking the real user of the telephone.
Such testimony falls squarely within the characterization of expert testimony in Rule 702. In so far as I can tell, no other circuit would conclude otherwise.[22]
We have complained in prior cases that the line between expert testimony under Rule 702 and lay testimony under Rule 701 is, in practice, “not [an] easy [one] to draw.” United States v. Colón Osorio, 360 F.3d 48, 52-53 (1st Cir.2004); see also United States v. Hilario-Hilario, 529 F.3d 65, 72 (1st Cir.2008) (“There is no bright-line rule to separate lay opinion from expert witness testimony.”). This is a difficulty of our own making. Instead of focusing on the purpose of the question being asked (is the particular conduct in this case consistent with drug trafficking generally), and the basis for the witness’s answer (training and experience), we make the problematic judgment that the majority makes in this case (“It required no scientific or technical expertise within the scope of Rule 702 for Carpió to conclude, based on his experience in prior drug investigations, that traffickers often list unrelated third parties as their telephones’ subscribers, and that, in this case, the phone account at issue was organized under a similar scheme.”)
*61 I understand the appeal of this judgement. At the core of Carpio’s testimony is the seemingly common sense notion that drug traffickers try to conceal their conduct. Why do we need a battle of experts, or carefully prepared cross-examination, to test for jurors the reliability of such testimony? The answer is that the simplicity of Carpio’s testimony is deceptive. The issue is not the impulse of traffickers to conceal their conduct, but rather the specific practices they use to do so. Perhaps many traffickers, instead of using registered phones, use disposable phones, which do not require the use of anyone’s name. Perhaps phone companies are not as willing as Carpió suggests to allow registration without proper identification. These possibilities involve specialized knowledge that lawyers do not usually possess. They involve knowledge beyond the experience of most jurors. Hence, we should be wary of making the qualitative judgment that the opinion testimony of police officers, that otherwise meets the requirements of Rule 702 is so simple or obvious that we can treat it as lay opinion testimony under Rule 701. Our readiness to make these judgments has created the hazy line that we complain about. It has created in some of our precedents an unwarranted police exception from the requirements applicable to expert testimony.
We need to rethink these precedents. We need to apply the bright line rule that the language of Rule 702 provides in deciding whether a police officer is testifying as a fact witness or an expert witness. If the officer is being asked to draw on specialized knowledge acquired through experience and training to offer an opinion on the inculpatory significance of the particular conduct of the defendant, that officer is testifying as an expert witness. I recognize that such application of the rule may add to the burden of a prosecution that has to comply with the disclosure requirements applicable to expert witnesses. See Fed. R.Civ.P. 26(2); Fed.R.Crim.P. 16(a)(1)(G), (b)(1)(C). The prosecution will have to think through in advance of trial exactly how police witnesses will be used at trial. But these burdens do not deny the prosecution the use of any testimony that they deem essential to their cases. At the same time, these burdens increase the likelihood that defense counsel will be able to fairly test the reliability of the opinion testimony of police officers who draw on their experience and training to characterize the particular conduct of the defendant as classic criminal conduct. That is how the system should work.

. This case is not a good candidate for an en banc proceeding because any error here was harmless.

. See United States v. Dukagjini, 326 F.3d 45, 52 (2d Cir.2003) (approving use of expert testimony about the operations of drug traffickers and coded language used in drug trafficking); United States v. Watson, 260 F.3d 301, 307 (3d Cir.2001) (affirming admission of expert testimony about the operations of narcotics dealers, including packaging practices and associated paraphernalia); United States v. Hopkins, 310 F.3d 145, 150-51 (4th Cir.2002) (approving admission of expert testimony about the methods and materials assodated with drug trafficking); United States v. Cuellar, 478 F.3d 282, 293 (5th Cir.2007) (acknowledging "routine” admission of expert testimony about the conduct and methods of operation unique to drug distribution, including drug smuggling), rev'd on other grounds, 553 U.S. 550, 128 S.Ct. 1994, 170 L.Ed.2d 942 (2008); United States v. Johnson, 488 F.3d 690, 698 (6th Cir.2007) (approving admission of expert testimony about conduct indicative of drug transactions); United States v. York, 572 F.3d 415, 420 (7th Cir.2009) (approving use of expert testimony about coded language); United States v. Peoples, 250 F.3d 630, 641 (8th Cir.2001) (collecting cases regarding use of expert police testimony and *57 approving use of expert testimony about coded language); United States v. Valencia-Amezcua, 278 F.3d 901, 908-09 (9th Cir.2002) (approving "commonplace” use of expert testimony about structure and organization of criminal enterprises); United States v. Garcia, 635 F.3d 472, 477 (10th Cir.2011) (approving admission of expert testimony about the arms trade and significance of the types of firearms purchased); United States v. Sarcona, No. 10-10992, 2012 U.S.App. LEXIS 233, at *24-25 (llth Cir. Jan. 6, 2012) (approving use of expert testimony about concealment practices of criminals, including the mechanics of money laundering); United States v. Wilson, 605 F.3d 985, 1025-26 (D.C.Cir.2010) (approving use of expert testimony about coded language).

. The Federal Rules of Evidence, including Rule 702, were enacted in 1975.

. Federal Rule of Evidence 702 states:
A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
(a) the expert’s scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

. Federal Rule of Evidence 701 states:
If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
(a) rationally based on the witness's perception;
(b) helpful to clearly understanding the witness’s testimony or to determining a fact in issue; and
(c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

. I have contributed to our misguided analysis on these lay/expert opinion testimony issues in a number of cases, including as a member of the panel in Ayala-Pizarro.

. Before trial, a party must disclose the identity of any expert witness it may use at trial. That disclosure must include, among other things, the subject matter on which the witness is expected to testify and a summary of the facts and opinions to which the witness is expected to testify. Fed.R.Civ.P. 26(2); Fed. R.Crim.P. 16(a)(1)(G), (b)(1)(C).

. I acknowledge that the analysis in this case is complicated by the fact that the challenged testimony arguably arose because of the nature of defense counsel’s cross-examination of Agent Caipio, which the government could not anticipate. It is not necessary to determine the effect of that complication in this case. The significant point is that if Agent Carpio's testimony had been elicited through direct examination, it should have been subject to the requirements placed on expert testimony. Under our precedent, it would not be.