In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-3425

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

MICHAEL WRIGHT,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 10 CR 1075—**Elaine E. Bucklo**, *Judge*.

ARGUED APRIL 19, 2013—DECIDED JULY 16, 2013

Before EASTERBROOK, *Chief Judge*, and POSNER and WILLIAMS, *Circuit Judges*.

WILLIAMS, *Circuit Judge*.   Michael Wright was convicted of cocaine distribution and sentenced to 150 months' imprisonment. At trial, the informant did not testify, but the government presented evidence of conversations in which Wright, in response to the informant's inquiries, admitted to stocking up drugs for sale. On appeal, Wright argues that his Sixth Amend-

ment right to confrontation was violated when the informant's statements were admitted in the absence of live testimony. But the statements—which were mostly confirmatory inquiries—were simply used to provide necessary context for Wright's own admissions, and using such statements to provide context in this way does not violate the Confrontation Clause. Wright next argues that the district court should have told the jury that it could draw an adverse inference against the government because it did not call the informant to the stand. But the primary purpose of the missing witness instruction is to address situations where the defendant was unfairly deprived of the opportunity to elicit favorable testimony, and here, Wright fails to show that the informant would have given such helpful testimony in the first place. Therefore we affirm.

## I. BACKGROUND

On February 26, 2010, Defendant Michael Wright met with an individual whom he did not realize was secretly cooperating with the Bureau of Alcohol, Tobacco, and Firearms ("ATF") and the Chicago Police Department as a confidential informant ("CI"). The CI, who was wearing a wire, told Wright that he had a customer who was looking to buy cocaine, and Wright said he was stocked up with it. Specifically, the conversation was as follows (Wright represented by "MW"):

> CI:     Yeah, wouldn't guess who . . . called me for
>          the s–t now.

MW: Mike?

CI: No.

MW: Who?

CI: That . . . guy that, that backed out on us. Looking.

MW: Everybody looking, dog.

CI: So, if he calls me this weekend, I might see you midweek.

MW: OK. Yeah, just call. But I'm straight. Everybody's been calling me.

CI: You stock . . .

MW: Since I've been gone, I had sixty two messages.

CI: You stocked up then?

MW: Yeah, I been stocked up.

CI: Cool.

MW: I did that before I left.

CI: Sweet, so you got a lot then?

MW: Yeah.

CI: So, we should be OK for . . .

MW: Yeah, we real cool. We cool all the way till I leave and come back. You know I try to stay two three weeks ahead.

CI: Cool.

On March 3, the CI took $4,650 in marked bills into Wright's apartment and left with 192 grams of cocaine. The police followed Wright to a nearby establishment and after searching him, found a $50 marked bill. A warrant was obtained to search Wright's apartment, where they found $4,600 in marked bills, 455 grams of cocaine in Ziploc bags, various other baggies of cocaine, scales, and a variety of materials used to prepare cocaine for sale. After Wright was arrested, he said, "Look, you got me; let's just start the sentence right now."

Wright was charged with two counts: distribution and possession with intent to distribute 500 grams or more of mixtures and substances containing cocaine. *See* 21 U.S.C. § 841(a)(1). Before trial, the government said that it would not be calling the CI as a witness. So Wright moved to preclude the CI's recorded statements pursuant to the Confrontation Clause of the Sixth Amendment. The district court denied the motion. Wright also asked for a missing witness instruction to the jury, i.e., an instruction that the jury may draw an adverse inference against the government due to its failure to call the CI as a witness. Denying the request, the court told Wright's counsel, "You've said yourself that you don't actually think that the witness has got anything to say that would be helpful to the defense, and you certainly haven't made your case for it." It added that Wright "really [had no] interest in calling the witness" and was "engaged in gamesmanship."

At trial, the government presented evidence of the above facts, which included playing the recording of the

February 26 conversation (with an ATF agent identifying the voices in the recording). The district court instructed the jury that the "confidential informant's statements are offered only to provide context for the defendant's statements and are not to be considered for the truth of the matters asserted." The jury convicted Wright on both counts and he was sentenced to 150 months' imprisonment. This appeal followed.

## II. ANALYSIS

Wright raises two arguments on appeal. First, he argues that his constitutional right to confrontation was violated when the CI's statements during the February 26 conversation were admitted without the CI's live testimony. Second, he argues that the district court abused its discretion when it declined to give a missing witness instruction. As discussed below, both arguments are without merit.

### A. Wright's Constitutional Right to Confrontation Not Violated Because CI's Statements Were Presented for Context

The Confrontation Clause of the Sixth Amendment bars the admission of testimonial statements (without the declarant's presence at trial) that are admitted for the truth of the matters asserted unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine him. *See United States v. Foster*,

701 F.3d 1142, 1150 (7th Cir. 2012).[1] But as we have explained in a number of similar cases involving the admission of a non-testifying CI's statements, such admission is permissible if the statements simply "provide context for the defendant's own admissions," *id.*, in that they "'help the jury make sense of [the defendant's] reaction to what [the CI] said and did.'" *Id.* (quoting *United States v. Gaytan*, 649 F.3d 573, 580 (7th Cir. 2011) (alterations in original)); *see also United States v. Walker*, 673 F.3d 649, 657-58 (7th Cir. 2012) (statements are admissible when they "make a defendant's recorded statements intelligible for the jury" or "when brief and essential to 'bridge gaps in the trial testimony' that might significantly confuse or mislead jurors" (quoting *Jones v. Basinger*, 635 F.3d 1030, 1046 (7th Cir. 2011))).

Here, the CI's statements were clearly contextual. Wright's key admission that he was "stocked up" on drugs and had several weeks' supply for sale was not made in a vacuum, but in response to the CI's inquiries. *See Foster*, 701 F.3d at 1152 ("[T]he statements were offered to provide relevant background to the defendant's responses, enabling the jurors to comprehend the conversation as a whole."). Without the CI's statements,

---

[1] Because we find no Confrontation Clause violation even on de novo review, *see Foster*, 701 F.3d at 1150 (applying de novo standard), we need not discern from the ambiguous record whether Wright may have forfeited this argument, triggering plain error review. We also need not address whether the CI's statements are formally considered "testimonial," an issue which the parties do not brief.

Wright's responses would have been unintelligible, and a jury would not have any sense of why the conversation was even happening. *See, e.g.*, *id.* at 1152 ("Foster's statements would have been unintelligible without reference to the CI's statements[.]"). Of course, we must be vigilant to ensure that the government does not "seek to admit based on 'context' statements that are, in fact, being offered for their truth.*" United States v. Nettles*, 476 F.3d 508, 517 (7th Cir. 2007); *see, e.g.*, *Walker*, 673 F.3d at 657 (CI's statement that the defendant gave him a revolver, directly relevant to the defendant's guilt, should not have been admitted); *cf. United States v. Gorman*, 613 F.3d 711, 719 (7th Cir. 2010) (overruling "inextricable intertwinement" exemption from Rule 404(b) standard). But here it is difficult to imagine how the CI's statements independently establish any fact relevant to Wright's guilt. Most of the CI's statements were inquiries, not factual assertions. *See, e.g.*, *Nettles*, 476 F.3d at 518 ("Sometimes, [the declarant] asked questions (presumably in order to elicit more incriminating information from [the defendant]), . . . [but] does not appear to say anything of substance."). And the CI's only factual assertion was that some "guy" was asking the CI for drugs, but that testimony was not offered to show that some "guy" *actually* wanted drugs from the CI—the assertion was plainly being used as a ruse, which led to Wright's key admissions. *See United States v. Gaytan*, 649 F.3d 573, 580 (7th Cir. 2011) ("These statements were not being offered to show that some 'dude' with Gaytan's brother *actually* wanted to buy two ounces of 'rock'; the statements were offered to show their effect on the

listener, Gaytan.”); *Walker*, 673 F.3d at 657 (”[The CI] was following an ATF script when he enlisted and plotted with the defendants to rob the phony stash house, so his parts of the recorded conversations were offered to make the defendant's statements intelligible.”). So there was no constitutional violation.

Given our decision, we need not reach the government's additional argument that any constitutional violation was cured by the district court's instruction to the jury that the CI's statements were only offered “to provide context for the defendant's statements and are not to be considered for the truth of the matters asserted.” But we will. As the government correctly notes, we have “approved the use of such instructions to ensure that the jury is aware of the proper weight and consideration to give the non-testifying informant's statements.” *See, e.g.*, *Foster*, 701 F.3d at 1152; *Gaytan*, 649 F.3d at 580; *United States v. James*, 487 F.3d 518, 524 (7th Cir. 2007); *United States v. Van Sach*, 458 F.3d 694, 701 (7th Cir. 2006). And at oral argument, Wright's counsel conceded that these instructions were proper.

But while this kind of boilerplate instruction might not be reversible error under our precedent, we are concerned that generic jury instructions unadapted to the particulars of a case may fail to give the practical guidance that lay jurors need.[2] If scenarios like these

---

[2] Neither the 2012 edition of the Pattern Criminal Jury Instructions of the Seventh Circuit nor the prior edition appears to

(continued...)

arise in the future, and instructions are to be given, those instructions should tell the jury—directly and concretely—what it can and cannot consider, and why. For example, the jury could have been told that the CI's half of the conversation was being played only so that it could understand what Wright was responding to, and that the CI's questions and statements standing alone were not to be considered as evidence of Wright's guilt. By using the boilerplate instruction in this case, it may not have been clear what considering the CI's statements only for "context" actually meant. Indeed, even the government could not give a clear and straight-forward explanation of the term when asked at oral argument. It might also have been confusing to tell the jury not to consider the CI's statements "for the truth of the matters asserted" since most of his statements were questions anyway. We provide the above example merely by way of illustration, not because it is the best one, and definitely not to create another template which district courts should feel compelled to use in all cases. The bottom line is that litigants and judges should continue endeavoring to make jury instructions as concrete and understandable to lay jurors as possible.

---

(...continued)
have a template for this situation; the language used in the instruction in this case appears to have been lifted directly from our past Confrontation Clause cases.

**B.  Missing Witness Instruction Was Not Required Because Wright Did Not Want the CI to Testify**

Wright next argues that the district court should have given a "missing witness" instruction, i.e., an instruction that the jury may infer from the CI's absence that he would have given testimony harmful to the government. "The missing witness instruction is disfavored in this circuit, but a district court has discretion to give it in unusual circumstances. Before the accused in a criminal case would be entitled to the instruction, he would need to show (1) that if called, the witness would have been able to provide relevant, noncumulative testimony on an issue in the case; and (2) that the witness was peculiarly in the other party's power to produce." *United States v. Tavarez*, 626 F.3d 902, 904-05 (7th Cir. 2010) (citations omitted). Wright argues that the first prong was satisfied because the CI was the only individual other than Wright that witnessed the March 3 transaction. But he fails to make any non-speculative showing that the CI's testimony would have actually been helpful to him. *See United States v. Cochran*, 955 F.2d 1116, 1123 (7th Cir. 1992) ("[The defendant] must show that the witness was under the power of the government and that the missing witness'[s] testimony would have been helpful, that is, both relevant and non-duplicative."); *see also United States v. Villegas*, 655 F.3d 662, 671 (7th Cir. 2011).

The primary purpose of the instruction is to address situations where a defendant is unfairly deprived of the opportunity to elicit favorable testimony (whether

because the witness was physically unavailable or—as Wright argues in this case—"pragmatically" unavailable, *Foster*, 701 F.3d at 1155). If no favorable testimony is out there, then a missing witness instruction serves no legitimate purpose—at least Wright fails to identify one in this case. All that is left, as the district court correctly said, is gamesmanship. *See Villegas*, 655 F.3d at 671 ("[O]ther courts have noted that where the defense seeks the 'dual benefit of avoiding . . . potentially harmful testimony at trial, while at the same time obtaining the advantage of a negative inference drawn by the jury about the government's failure to produce . . . [the] witness . . . the trial court [is] under no obligation to grant the motion for a 'missing witness' instruction.' " (quoting *United States v. Spinosa*, 982 F.2d 620, 633 (1st Cir. 1992)). The district court's denial of the instruction for these reasons was not an abuse of discretion.

## III. CONCLUSION

For the above-stated reasons, we AFFIRM Wright's conviction.