NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-3253
_____

UNITED STATES OF AMERICA

v.

BRIAN WILLIAM WALPOLE,
                                        Appellant

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 10-cr-00340-001)
District Judge:  Hon. Yvette Kane
_____

Submitted Under Third Circuit LAR 34.1(a)
October 18, 2013

Before:  RENDELL, JORDAN and LIPEZ*, *Circuit Judges*

(Filed: October 23, 2013)
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Brian William Walpole appeals his conviction and the sentence imposed by the

United States District Court for the Middle District of Pennsylvania.  He contends that

_____
          * Honorable Kermit V. Lipez, United States Court of Appeals Senior Judge for the
First Circuit, sitting by designation.

the District Court erred in allowing an FBI agent to testify as both a lay witness and an expert; in increasing the offense level and criminal history category applicable to him under the United States Sentencing Guidelines' (the "Guidelines"); and in imposing a term of 50 years' imprisonment. We conclude that there was an error in the calculation of Walpole's criminal history category, and we will therefore remand for resentencing. In all other respects, we will affirm.

## I. Background

On December 3, 2012, after failed plea negotiations, Walpole pled not guilty to a three-count Indictment charging him with Sexual Exploitation of a Child, in violation of 18 U.S.C. § 2251(a)(1), (e), Receipt of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2), (b)(1), and Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2). Those charges arose from an FBI investigation involving peer-to-peer file sharing of child pornography.

Using the member account of an individual previously the subject of an FBI child pornography investigation, the FBI logged into a peer-to-peer program and observed the habits of an individual using the alias "Boyballs." The FBI downloaded 62 images made available online by Boyballs and thereafter subpoenaed Comcast, the local Internet service provider, to learn the Internet Protocol ("IP") address for Boyballs. That address corresponded to a computer in the home of Mavis Walpole of York, Pennsylvania, where Brian Walpole was also known to reside. On September 9, 2010, a search warrant was executed at the Walpole residence, where the FBI seized two computer towers, two laptop computers, numerous DVDs and CDs, four mini DVDs, a Panasonic mini-DVD

2

recorder, and several flash drives. That same day, Brian Walpole was interviewed and admitted to downloading "normal pornography." (Presentence Investigation Report ["PSR"] ¶ 7.) He then asked for an attorney.

FBI agent Heather Thew was primarily responsible for reviewing the items seized at the Walpole residence. In total, she reviewed over 200,000 images of the roughly 600,000 images from the computer towers, 13,373 of which met the Guidelines' definition for child pornography. At least 52 of those also depicted children who were bound, restrained, or suffering from other sadistic treatment. In addition, when reviewing the four mini-DVDs, Thew learned that Walpole had secretly recorded a 14-year-old boy, C.P., masturbating. Walpole's face can be seen on the recording, as he adjusted the angle of the camera while setting it up. C.P. corroborated that the individual shown on the recording was him and that Walpole had set up a home office for C.P. to watch pornography.

During a proffer interview, Walpole admitted to possessing child pornography, downloading child pornography, distributing child pornography through the use of peer-to-peer programs, and surreptitiously videotaping C.P. In addition, he confessed to having had sexual contact with his adopted brother in the early to mid-1990s, when Walpole was in his late twenties and his brother was under the age of ten. Walpole's mother had caught Walpole as he was about to perform oral sex on the child and she

subsequently called the police and Children and Youth Services. That episode resulted in Walpole's 1996 convictions for Indecent Exposure and Corruption of Minors.[1]

After a one-day jury trial on January 10, 2012, Walpole was convicted on all three counts. A PSR was then prepared by the United States Probation Office. For the first count, Sexual Exploitation of a Child, the PSR calculated Walpole's offense level as 36. The PSR grouped the second and third counts together, pursuant to § 3D1.2(c) of the Guidelines. For those counts, Receipt of Child Pornography and Possession of Child Pornography, the PSR calculated an offense level of 45. A multiple count adjustment increased his offense level to 46. The PSR then credited Walpole's initial admission of responsibility, despite his later plea of not guilty, and so decreased the offense level to 44 and finally to 43, which is the maximum under the Guidelines.[2] As for Walpole's criminal history category, the PSR recommended that, although Walpole had "zero criminal history points," his criminal history category should be set at V because he is "a Repeat and Dangerous Sex Offender Against Minors." (PSR ¶70.) The Guidelines generally recommend a life sentence based on an offense level of 43 and a criminal history of V, but, because the combined statutory maximum term of imprisonment for Walpole's offenses is 60 years, the Guidelines sentence was calculated to be 720 months.

---

[1] While the PSR notes that Walpole was convicted in 1995, he was actually sentenced in 1996.

[2] Pursuant to U.S.S.G. Ch. 5, Part A, Application Note 2, "[a]n offense level of more than 43 is to be treated as an offense level of 43" for the purpose of determining a Guidelines sentence. *Id*.

At sentencing, Walpole made a number of objections, which the District Court considered but eventually overruled. First, he denied that he had any "supervisory control" over C.P. that would, with respect to the Child Exploitation count, warrant application of § 2G2.1(b)(5) of the Guidelines, which provides a two-level enhancement if "the minor was otherwise in the custody, care, or supervisory control of the defendant." The Court disagreed, finding that Walpole had been "entrusted" with C.P. by C.P.'s guardians and that Walpole need not have been "a caregiver in a technical sense" to meet the requirements of "supervisory control." (App. at 196a.) Second, Walpole objected to the grouping of Counts 2 and 3 together since he believed doing so wrongly increased his offense level for Count 3 from 36 to 45. The Court overruled that objection, holding that the "offenses are properly grouped" in accordance with § 3D1.2(c), which provides that counts "involving substantially the same harm" be grouped together in a single group when "one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts." (App. at 203a.) Finally, Walpole challenged the addition of a five-level enhancement under § 2G2.2(b)(5) to Counts 2 and 3, for engaging in a "pattern of activity involving the sexual abuse or exploitation of a minor." He argued that his prior convictions were not on their face "sexual," and therefore outside of the plain language of § 2G2.2(b)(5), although he conceded at sentencing (through counsel) that "the pattern of activity is there." (App. at 203a-205a.) Despite Walpole's lengthy explanation, the Court found the enhancement appropriate "whether or not there is a conviction for [sexual abuse]." (App. at 210a.)

5

Ultimately, the Court did grant Walpole a variance from the Guidelines' recommended sentence. Walpole had argued for a variance based on what he described as his "impending deportation" to Canada, one of his countries of citizenship.[3] (App. at 223a, 240a.) He also asked for a variance based on his ongoing depression and other mental health issues, and based on his proffer interview, which provided to the government the identities of the child pornography Websites he frequented and the usernames of the child pornography collectors he found online. Rather than imposing the statutory maximum, the District Court committed Walpole to be imprisoned for a term of 360 months on Count 1, 240 months on Count 2, and 120 months on Count 3, with Counts 1 and 2 to be served consecutively and Count 3 to be served concurrently, for a total of 600 months', or 50 years', imprisonment.

Walpole timely appealed.

## II. Discussion[4]

As earlier noted, Walpole contends that the District Court erred by admitting FBI Agent Thew's testimony without qualification; by applying certain Guidelines' offense level enhancements and increasing his criminal history category; and by imposing a substantively unreasonable sentence. We consider the first two arguments in turn, but, because remand is required to address the miscalculation of his criminal history category, we leave Walpole's other sentencing complaints for the District Court.

---

[3] Walpole is a citizen of Canada and the United Kingdom.

[4] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

A.    *Agent Thew's Testimony*

Walpole made no objections at trial to Agent Thew's testimony, but now argues that the evidence she gave "blurred the line between lay testimony and expert testimony." (Appellant's Opening Br. at 10.)  As he did not raise the issue at trial, we review it only for plain error.[5]

With respect to Agent Thew's testifying without having been qualified as an expert, Walpole essentially makes five arguments directed at what he says were the subjects of the improper expert testimony, namely, (1) the seized pornography's interstate-commerce nexus; (2) the distinct terms and procedures used in child pornography prosecutions; (3) the ages of the individuals depicted in the pornographic images; (4) the factors the agent used to make those age determinations; and (5) the ultimate question of whether the seized images were indeed child pornography.  Walpole argues that while Thew's testimony had "all of the hallmarks of expert testimony, [it] failed to satisfy any of [its] prerequisites ... ." (*Id.* at 11.)[6]

Walpole also argues that Agent Thew's testimony was unduly prejudicial because she testified as both the arresting officer – testifying as to facts – and the officer who

---

[5] "A defendant must satisfy a four-prong test to be successful under plain error review: there must be (1) an error; (2) that is plain; (3) which affects substantial rights; and (4) seriously impairs the fairness, integrity, or public reputation of judicial proceedings." *United States v. Saferstein*, 673 F.3d 237, 241 (3d Cir. 2012) (internal quotation marks omitted).

[6] In the alternative, Walpole contends that, even if Thew were considered as a lay witness, the agent nonetheless failed to possess the requisite "relevant specialized knowledge" to offer the testimony she gave.  Given the record, that argument is patently without merit and requires no further comment.

uncovered the pornography – opining about the evidence. That dual role was, he suggests, likely to confuse the jury. (Appellant's Opening Br. at 15.) "Because 'the jury may unduly credit the opinion testimony of an investigating officer based on a perception that the expert was privy to facts about the defendant not presented at trial,'" Walpole maintains that the Court should have provided the jury with cautionary instructions. (*Id.* (quoting *United States v. Upton*, 512 F.3d 394, 401 (7th Cir. 2008)).)

None of Walpole's arguments are persuasive on this record. Agent Thew made clear that she was testifying as to her own knowledge of her own investigation. *See* Fed. R. Evid. 701 (a witness may testify "based on the witness's perception"); *see also United States v. Gaytan*, 649 F.3d 573, 582 (7th Cir. 2011) *cert. denied*, 132 S. Ct. 1129 (2012) ("A law-enforcement officer's testimony is a lay opinion if it is 'limited to what he observed ... or to other facts derived exclusively from [a] particular investigation.'" (internal citations omitted)). That she was permitted to describe what an IP address is or what EXIF data are does not amount to plain error. While those terms may not be common in everyday conversation, the prevalence of online photo-sharing – where IP addresses and EXIF data are constantly used – indicates that it was not plainly erroneous to allow the agent to name these commonly used features of computer communication without being qualified as an expert, especially since her experience investigating online crimes gave her familiarity with the terms. *Cf. United States v. Ayala-Pizarro*, 407 F.3d 25, 28 (1st Cir. 2005) (noting that testimony about how drug locations operate "was based on the requisite personal knowledge under Fed. R. Evid. 602 and also met the requirements of Fed. R. Evid. 701, because it was based on 'particularized knowledge

8

that the witness [had] by virtue of his ... position' as a police officer assigned to patrol the neighborhood" (quoting Fed. R. Evid. 701, advisory committee's note)). Nor was Agent Thew's testimony as to the country of manufacture of the mini-DVDs such that any particular expertise was in question: rather, she identified the country directly from the "Made in ..." label on the DVDs. With respect to the ages of the individuals in the images retrieved from Walpole's computers, Agent Thew offered her opinion not as an expert but as an ordinary, sensible person. In child pornography cases, expert testimony may be necessary to establish the age of an individual depicted in an image, *United States v. Katz*, 178 F.3d 368, 373 (8th Cir. 2001), but a lay witness can still express an opinion regarding an individual's age, *United States v. Yazzie*, 976 F.2d 1252, 1255-56 (9th Cir. 1992). Moreover, many of the images were unquestionably of children. Walpole admitted as much during his proffer interview, and, sadly, some of the images, being of toddlers and infants, make it obvious that children are depicted. Finally, Walpole's argument that Agent Thew's "dual role" may have confused the jury is unsupported by the record and certainly does not establish plain error.

B. *Guidelines Enhancements*

Walpole contends that the District Court erred by applying § 2G2.2(b)(5) to effect a five-level sentencing enhancement to the child pornography counts based on a "pattern of activity involving the sexual abuse or exploitation of a minor," and by imposing under § 4B1.5 an increase in Walpole's criminal history category from I to V. (PSR ¶ 50.) "Where, as here, a challenge is made to the calculation of the Guidelines range, [we] review[] the District Court's interpretation of the Sentencing Guidelines *de novo,* and

9

scrutinize[] any findings of fact used in the calculation for clear error." *United States v. Wood*, 526 F.3d 82, 85 (3d Cir. 2008) (citations omitted).

1. *Pattern of Activity Involving the Sexual Abuse or Exploitation of a Minor*

Walpole contests the five-level increase under § 2G2.2(b)(5) because he says it effectively "double counts" his sexual exploitation of minors. As he sees it, applying that enhancement to the grouped-together child pornography counts, Counts 2 and 3, is unfair because he faces punishment for sexual exploitation under Count 1. He also says that no "pattern of activity" existed since his prior convictions "stem[] from the same criminal episode," that his prior convictions "do[] not rise to the level of sexual abuse or exploitation," and that "[n]o testimony was offered at sentencing in support of this enhancement." (Appellant's Opening Br. at 20.)

Walpole's arguments ignore both the record and the import of the particular Guideline in question. First, during his proffer interview, Walpole admitted to "touching [his younger brother's] genitals and having [his younger brother] touch [his]." (PSR ¶ 24.) His younger brother corroborated that criminal conduct. Walpole claims that the molestation was only a single incident, and therefore not a pattern, but the District Court, relying on the brother's statement, found that Walpole's behavior had "gone on for some time" (App. 212a), and qualified as a pattern. The commentary to § 2G2.2(b)(5) notes that a pattern means "any combination of two or more separate *instances* of the sexual abuse or sexual exploitation of a minor." U.S.S.G. § 2G2.2(b)(5) cmt. n.1 (emphasis added). It is clear from both Walpole's and his younger brother's interviews that the

10

molestation their mother stumbled upon was not the first and only incident of its kind. At sentencing, Walpole's counsel conceded, as the record demands, that "the pattern of activity is there." (App. at 205a.)

Second, although Walpole continues to assert that the "activity" he engaged in with his little brother was not sexual abuse or sexual exploitation of a minor, it obviously was. It is, indeed, deeply disturbing that anyone would even claim the contrary. While Walpole is correct that his prior convictions are not "covered sex crime[s]" under the terms of § 4B1.5 of the Guidelines, they need not be for the enhancement under § 2G2.2(b)(5) to apply. A pattern of abuse may exist with or without sex crime convictions. *See* U.S.S.G. § 2G2.2(b)(5) cmt. n.1 ("'Pattern of activity involving the sexual abuse or exploitation of a minor' means any combination of two or more separate instances of the sexual abuse or sexual exploitation of a minor by the defendant, whether or not the abuse or exploitation ... resulted in a conviction for such conduct.").

As for the "double-counting" of his sexual exploitation – an argument that Walpole failed to make before the District Court so we review only for plain error[7] – Walpole again ignores the record. The exploitation enhancement under § 2G2.2(b)(5) for Counts 2 and 3 is not a repeat of the exploitation charged in Count 1. The enhancement at issue relates to his actions toward his younger brother, whereas Count 1 involves his surreptitious recording of C.P. The § 2G2.2(b)(5) enhancement was fully justified.

_____

[7] "[W]here a defendant has failed to object to a purported error before the sentencing court, our review on appeal is only to ensure that plain error was not committed." *United States v. Knight*, 266 F.3d 203, 206 (3d Cir. 2001).

11

## 2. *Criminal History Enhancement*

Walpole also contends that the PSR improperly considered his prior misdemeanor convictions in determining that he had a criminal history category of V. The PSR initially noted that Walpole "has zero criminal history points resulting in a Criminal History Category I." (PSR ¶ 70.) However, by concluding that Walpole is a "Repeat and Dangerous Sex Offender Against Minors," the PSR "automatically" increased his criminal history category to V, despite his having no record of prior sex offense convictions. (*Id*.) The government concedes that the Probation Office erred in this regard, saying that, "given § 4B1.5(a)(2)'s requirement of a sex offense *conviction*, and the way the Application Notes to that guideline define a 'sex offense conviction,' the use of the fact of Walpole's state convictions for indecent exposure and corruption of a minor, without more, ... is problematic ... ." (Appellee's Br. at 40-41.) Indeed, the PSR was unquestionably wrong: Walpole should have been placed in criminal history category I, since his prior convictions are not "covered sex crime[s]" under Guidelines § 4B1.5.

While the government claims that the criminal history error is harmless, we cannot agree. "An erroneous calculation of the Guidelines will frustrate the sentencing court's ability to give meaningful consideration to 'the kinds of sentence and the sentencing range established for ... the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines.'" *United States v. Langford*, 516 F.3d 205, 212 (3d Cir. 2008) (citations omitted). That standard applies not only to a defendant's offense level calculation but also to an erroneous determination of a

12

defendant's criminal history category, since both are necessary to determine the recommended Guidelines range. Although the government is correct that we have left the door open to the possibility that error in such calculations may be harmless, here the District Court did not, as has occurred in other cases, give any assurance "that the [criminal history] enhancement had no effect on the sentence imposed." *United States v. Zabielski*, 711 F.3d 381, 389 (3d Cir. 2013). On the contrary, the District Court compared Walpole's criminal history to the history of other defendants, which indicates that the criminal history categorization in this case may have played a role in the Court's judgment. Further, even though Walpole's total offense level of 43 corresponds to a recommended sentence of life imprisonment regardless of his criminal history category, that does not assure that the error here was harmless. Rather, before a non-constitutional error can be held harmless, a court must "possess a sure conviction that the error did not prejudice the defendant." *Langford*, 516 F.3d at 215 (internal citations omitted). We do not have that conviction. Walpole argues that a criminal history category of V led "the district court [to] perceive[] [him] in [a] certain light" (Appellant's Reply Br. at 10), and he may be right. We cannot now speculate about how the District Court might have perceived Walpole differently, if the Guidelines calculation had been correct. While it is certainly possible that the facts of Walpole's criminal activities, not his criminal history score, were the object of the District Court's thoughtful consideration in designing the sentence it imposed, we do not possess a sure conviction that the criminal history error did not play some part. A remand for resentencing is thus required. [8]

---

[8] While Walpole also raises questions about the reasonableness of his sentence,

## III. Conclusion

For the foregoing reasons, we will affirm Walpole's conviction but will remand for resentencing in light of a corrected Guidelines calculation.

---

that issue is no longer properly before us given our decision to remand. Suffice it to say that we "will affirm [a sentence] unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." *United States v. Tomko,* 562 F.3d 558, 568 (3d Cir. 2009) (en banc). Nothing we have said here should be taken as indicating either approval or disapproval of the period of incarceration previously imposed. It is for the District Court to determine the appropriate sentence, after a proper Guidelines calculation and consideration of the parties' arguments.